**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.   1:19-cr-378-JMS-MJD |
| | ) | |
| WILLIAM ERIC MEEK, and | ) | -01 |
| BOBBY LEE PEAVLER, | ) | -02 |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S OPPOSITION TO THE DEFENDANTS'
MOTION TO DISMISS PORTIONS OF THE INDICTMENT AND FOR PRODUCTION
OF GRAND JURY MATERIAL**

The United States of America respectfully submits this memorandum in opposition to Defendant Bobby Peavler's Motion to Dismiss Portions of the Indictment and for Production of Grand Jury Material and its accompanying memorandum of law (ECF Nos. 69 and 70), which Defendant Eric Meek has sought to join (ECF No. 75) (collectively "Peavler Motion").

**INTRODUCTION**

Counts 1, 7, and 8 of the Indictment are properly pled securities fraud violations under 18 U.S.C. § 1348.  Those counts, along with the rest of the Indictment, allege that the defendants defrauded Celadon's investors (and its banks and auditors) by misrepresenting the company's true financial condition to them.   They did this, the Indictment alleges, through a series of transactions designed to make Celadon's financial condition appear better than it really was.   The defendants allegedly concealed the true nature of those transactions, while at the same time reported out rosier financial results based on the deceptive transactions they devised—including in the quarterly reports charged in Counts 7 and 8.   Thus, as is common in fraud cases, Counts 1, 7, and 8 allege

1

that the defendants and Celadon made false statements to investors not only through affirmative misrepresentations but also through a series of half-truths and acts of concealment.

Peavler's Motion takes issue with a portion of the charging language in Counts 1, 7, and 8 that spells this out, namely the phrase "by statements containing material omissions."  *See* Indictment ¶¶ 48(c), 57.   He argues that including this phrase in the Indictment requires dismissal of those counts because the phrase does not appear in 18 U.S.C. § 1348(2) itself, and because, in Peavler's view, including it in the Indictment would allow the government to convict on those charges by proving merely a material omission alone, without some accompanying act of misrepresentation or concealment.

This argument fails for several reasons.   First, procedurally, a motion to dismiss is not the proper vehicle for Peavler's challenge to a narrow (and hypothetical) theory of prosecution under what even he concedes are properly pled securities fraud violations alleged in Counts 1, 7, and 8. He concedes that he has no quarrel with those counts insofar as they charge a "scheme to defraud" under 18 U.S.C. § 1348(1).   *See* Peavler Mot. at 1 n.1.   And, even under 18 U.S.C. § 1348(2), which is his focus, he expresses no qualms with Counts 1, 7, and 8 to the extent they allege fraud by false statements (which, as will be discussed, is what they do allege).   Thus, he has conceded that Counts 1, 7, and 8 "state an offense" that was properly charged by the grand jury for purposes of Fed. R. Crim. P. 12.   The narrow focus of Peavler's Motion is akin to litigation over jury instructions at trial, not dismissal of entire counts from an indictment.   "[W]here a statute defines two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count." *United States v. Cox*, 536 F.3d 723, 726 (7th Cir. 2008).   The Court should deny Peavler's Motion on this basis alone.

Second, there is no error in including the phrase "by statements containing material omissions" in Counts 1, 7, and 8 of this Indictment.   The phrase merely reiterates the fact that those counts charge the defendants with making, and causing Celadon to make, false statements to investors that involved half-truths and concealment.   Put another way, "statements containing material omissions" is synonymous for half-truths and concealment, which in turn is conduct criminalized by 18 U.S.C. § 1348.

Counts 1, 7, and 8 do not allege a standalone omissions theory.   To the extent Peavler contends that they do, he attacks a strawman.[1]   And, the Court need not address whether 18 U.S.C. § 1348(2) reaches such a theory.   The Indictment in this case does not allege that the defendants committed securities fraud because they stood in silence while Celadon's financial health declined. Or more specifically, the Indictment does not allege that the defendants committed securities fraud simply by "fail[ing] to disclose that the value of Celadon's used trucks had fallen due to falling prices in the used truck market."   *See* Peavler Mot. at 2.   Rather, it alleges that the defendants spoke, and caused Celadon to speak, about the company's purported financial health and about the effect that a series of transactions had on its health, but then intentionally stopped short of uttering the full truth—and took steps to conceal that full truth—which made what they did say false.   That is why the Indictment language Peavler challenges was phrased the way it was, alleging not just "material omissions" but "*statements containing* material omissions."

Specifically, the Indictment alleges that when the used truck market fell, causing the value of Celadon's trucks to fall, the defendants intentionally took steps to hide the losses that Celadon

---

[1] This does appear to be what Peavler believes the Indictment alleges.   *See, e.g.*, Peavler Mot. at 12 n.5 (phrase would "allow prosecution of any alleged omission"), 15 (phrase meant "defendants could be charged because of any 'omission' of publicly known facts"), 16 ("any alleged 'material omission' was enough for indictment under Section 1348(2)"), 19 (phrase meant "all perceived material omissions were a violation of Section 1348(2)").

had suffered.   For example, when Celadon traded older trucks for newer ones with a certain truck dealer, the defendants and their co-conspirators papered the transactions as though they were independent purchases and sales, and at prices that were intentionally inflated to compensate for the dramatic decline in value of Celadon's trucks.   Celadon's financial reports reflected only how the transactions appeared on their face—the purported "value" of the new trucks based on their inflated prices.   But the reports left out that those prices had been intentionally inflated to match the "book value" of the truck Celadon sold, and they failed to reflect that the transactions were actually trades, as opposed to independent purchases and sales, which itself had accounting ramifications.   Thus, the defendants misrepresented the value of Celadon's truck fleet to the investing public by disclosing some information about the trade transactions but omitting the full truth.

Similarly, the Indictment alleges that the defendants used the last of these trade transactions not only to inflate the value of the truck fleet, but also to artificially manipulate Celadon's reported debt load at the end of a fiscal quarter (specifically, the quarter reflected in the report named in Count 7).   They allegedly did this by intentionally staggering the payments for the truck trade so that Celadon would receive millions of dollars from the truck dealer just before the quarter-end, and then would pay even more money back to the truck dealer just days after.   However, the Indictment continues, when it came time to publicly report quarterly results, the defendants gave investors (and banks and auditors) only half of the truth.   They told them the part about Celadon selling trucks, receiving millions in cash, and paying down debt.   But they left out the part about Celadon's commitment to buy trucks and pay out even more millions just days later—an obligation documented in writing, negotiated by Peavler, and signed by Meek.   As a result, according to the

Indictment, when the defendants reported Celadon's debt at quarter-end, and critically, that based on that debt they were in compliance with their loan agreements, they were lying.

Such conduct falls squarely within federal fraud statutes such as 18 U.S.C. § 1348(2).   *See United States v. Keplinger*, 776 F.2d 678, 697 (7th Cir. 1985) ("It requires no extended discussion of authority to demonstrate that omissions or concealment of material information can constitute fraud[.]").   Indeed, "[s]ection 1348 was intended to provide prosecutors with a different—and broader—enforcement mechanism to address securities fraud than what had been previously provided in the Title 15 fraud provisions[.]"   *United States v. Blaszczak*, 947 F.3d 19, 36–37 (2d Cir. 2019).   And, material omissions and acts of concealment of the kind charged in Counts 1, 7, and 8 are routinely brought under Title 15's fraud provisions, as reflected in the jury instructions from a securities fraud trial in this district:

> [T]o find a defendant guilty of this charge, the government must prove [among other things] . . . the defendant . . . made an untrue statement of material fact or *omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading*.

*United States v. Durham*, No. 1:11-cr-00042-JMS-DML, ECF No. 353 (Final Jury Instructions) at 36 (June 20, 2012) (emphasis added).

That is precisely what Counts 1, 7, and 8 allege—that Celadon's financial reports made untrue statements of material fact and omitted material facts that made statements in the financial reports misleading.   Including the phrase "by statements containing material omissions" in the charging language simply reflects this properly charged violation of 18 U.S.C. § 1348.   The grand jury was not misled.   Ordering the grand jury transcript is uncalled-for.   Peavler's Motion should be denied.

## BACKGROUND

The Indictment charges both defendants with perpetrating a scheme to conceal Celadon's true financial condition from its investors, banks, auditors, and others.   ECF No. 62-1 (Amended Indictment).   To avoid repetition, the manner and means of the scheme include the alleged conduct described above—i.e., the trade transactions at inflated prices, staggering the fourth trade transaction across a quarter-end, and reporting financial results that were rosier than reality in part because they failed to reflect the true nature of these transactions.   *See* Indictment ¶¶ 20-37; 41. In addition, the Indictment alleges that along the way, the defendants lied to their auditors about the nature of these transactions, including when the auditors specifically asked about them.   *See id.* ¶¶ 38-40; 42-44.

Relevant to Peavler's Motion, Count 1 alleges conspiracy to commit wire fraud, bank fraud, and securities fraud, in violation of 18 U.S.C. § 1349; and Counts 7 and 8 allege securities fraud in violation of 18 U.S.C. § 1348.   As pertains to Counts 7 and 8 specifically, the Indictment alleges that the defendants and their co-conspirators made false and misleading statements in two separate quarterly reports required by the Securities and Exchange Commission, as follows:

On SEC Form 10-Q for quarter ending September 30, 2016, at Indictment ¶ 36:

    a.    MEEK, PEAVLER, Williams, and their co-conspirators caused Celadon to overstate its financial health by continuing to hide tens of millions of dollars in losses suffered by declining truck prices and other factors, which the conspirators continued to hide by using inflated truck prices during the four trade transactions with Truck Dealer 1.

    b.    MEEK, PEAVLER, Williams, and their co-conspirators caused Celadon to report figures that included the approximately $25 million net that Celadon had received from Truck Dealer 1 on or about September 29, 2016, but omitted any reference to or accounting for the September Trade Agreement and the $27 million that Celadon was obligated to pay (and did pay) to Truck Dealer 1 under the agreement.

      c.     MEEK, PEAVLER, Williams, and their co-conspirators caused Celadon to report that it was in compliance with all of its bank covenants, when in fact Celadon had exceeded the debt-to-earnings ratio permitted under its bank covenants with Bank 1.

On SEC Form 10-Q for quarter ending December 31, 2016, at Indictment ¶ 41:

      a.     MEEK, PEAVLER, Williams, and their co-conspirators caused Celadon to overstate its financial health by tens of millions of dollars by using inflated truck prices for the trucks that Celadon had acquired from Truck Dealer 1.

      b.     PEAVLER, as CFO, certified that he had disclosed "[a]ny fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting." In fact, PEAVLER had not disclosed that he had made false and misleading representations to Accounting Firm 1 about the transactions involving Truck Dealer 1, including in his management representation letter dated February 10, 2017.

## **DISCUSSION**

## I.    **The Court Should Deny Peavler's Motion Because He Concedes Counts 1, 7, and 8 Properly Allege Securities Fraud under 18 U.S.C. § 1348(1) and (2)**

An indictment is legally sufficient if it "(1) states all the elements of the crime[s] charged, (2) adequately informs the defendant of the nature of the charges against him, and (3) allows the defendant to assert the judgment as a bar to future prosecutions for the same offense." *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013) (citing *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). "[W]here a statute defines two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count." *Cox*, 536 F.3d at 726. And, as a general matter, a court should review indictments "on a practical basis and in their entirety, rather than in a hypertechnical manner." *Id.*

Despite citing Fed. R. Crim. P. 12(b)(3)(B)(v), Peavler's Motion does not claim that the Indictment fails to state a securities fraud offense in Counts 1, 7, and 8 under 18 U.S.C. § 1348. In fact, he expressly concedes that he is not challenging that those counts properly allege a "scheme

to defraud" in violation of 18 U.S.C. § 1348(1).   *See* Peavler Mot. at 1 n.1.   The Court can deny Peavler's Motion on this basis alone.   Counts 1, 7, and 8 meet the constitutional requirements for indictments, and a conviction on those counts may be sustained under the unchallenged "scheme to defraud" theory by itself.   *United States v. LeDonne*, 21 F.3d 1418, 1427 (7th Cir. 1994) ("Proof of any one of those acts conjunctively charged may support a conviction.").

In addition, Peavler's Motion does not claim that Counts 1, 7, and 8 fail to state an offense under 18 U.S.C. § 1348(2) either.   He challenges but one potential theory of prosecution under that prong of the securities fraud statute: fraud by omission.   As will be discussed in more detail below, Counts 1, 7, and 8 allege false statements, not omissions.   Thus, the entirety of Peavler's Motion is inapposite.   Still, even to the extent that Peavler's Motion is claiming (incorrectly) that Section 1348(2) does not apply to statements made false by half-truths and acts of concealment, he still does not challenge the fact that Counts 1, 7, and 8 also allege affirmative misrepresentations.   For instance, Count 7 alleges that the defendants "caused Celadon to report that it was in compliance with all of its bank covenants" when they knew it was not.   *See* Indictment ¶ 36(c).   Similarly, Count 8 alleges that Peavler lied when he said he certified that he had disclosed all instances of fraud when he did not.   *See* Indictment ¶ 41(b).

Furthermore, given the Indictment's extensive allegations about the defendants' scheme to defraud and false statements—which are taken as true, *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999)—there is little basis to believe that the phrase "statements containing material omissions" in the charging language of Counts 1, 7, and 8 "substantially influenced the grand jury's decision to indict" or caused "grave doubt that the decision to indict was free from the substantial influence of such violations."   *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (internal quotations omitted).

In sum, the focus of Peavler's Motion is so narrow that it does not provide a basis to dismiss Counts 1, 7, and 8.   The Court should deny the Motion.

## II.     In Any Event, Counts 1, 7, and 8 Properly Allege Securities Fraud Violations Under 18 U.S.C. § 1348(2)

Counts 1, 7, and 8 allege, in part, that the defendants perpetrated a scheme that involved making false and misleading statements about Celadon's financial condition.   Some of those statements were made false and misleading because the defendants allegedly omitted and concealed other facts.   The Seventh Circuit and others are clear that such a fraud theory is well within the scope of what Congress intended under 18 U.S.C. § 1348(2).   Including the phrase "by statements containing material omissions" in the charging language of Counts 1, 7, and 8 simply reflects this bedrock principle.   It does not, given the allegations in this Indictment, risk any confusion by the grand jury (or the defendants) that Counts 1, 7, or 8 allege fraud by omission alone.[2]

### A.     Counts 1, 7, and 8 Allege A False Statement Theory, Not An Omission Theory

Peavler suggests that the Indictment alleges "a broad omission theory that Defendants failed to disclose that the value of Celadon's used trucks had fallen due to prices in the used truck market."   *See* Peavler Mot. at 2.   This is wrong on two fronts.

First, Counts 1, 7, and 8 allege that the defendants made, and caused Celadon to make, false and misleading *statements* about Celadon's financial condition.   For instance, with regard to

---

[2] To be clear, the government does not concede that a standalone omission theory is improper under 18 U.S.C. § 1348(2).   That issue is unresolved in this Circuit.   *See, e.g.*, Seventh Circuit Criminal Pattern Jury Instructions (2019), at 459 (committee comment to instruction for "18 U.S.C. § 1344(2) Scheme – Definition").   Rather, the Court need not reach this issue to deny Peavler's Motion, because the Indictment in this case does not allege a standalone omissions theory.

Count 7 (the SEC 10-Q for the quarter ending on September 30, 2016), the Indictment alleges that the defendants caused Celadon to report figures that the defendants knew reflected intentionally inflated truck values.   *See* Indictment ¶ 36(a).[3]   In this sense, the crime alleged in Count 7 is not simply failing to disclose declining truck values.   It is affirmatively reporting figures based on prices paid for new trucks, while knowing and failing to disclose that those prices were intentionally inflated for the purpose of concealing declining truck values.

Similarly, Count 7 also alleges the 10-Q was materially misleading because it reported that Celadon had received $25 million from selling trucks to the truck dealer, but omitted any reference to the fact that, as part of receiving that money, Celadon was obligated to pay $27 million back to the truck dealer just a few days later.   Again, the crime is not simply failing to disclose the $27 million payback obligation.   It is affirmatively reporting that Celadon was $25 million richer (and in compliance with its bank loan covenants), while knowing and failing to disclose that Celadon was actually $2 million poorer—and that the very purpose for staggering the payments with the truck dealer was to make Celadon appear $25 million richer on its quarterly financial statements.

Second, Counts 1, 7, and 8 allege that the defendants made false and misleading statements in connection with, or in furtherance of, *other acts of concealment*.   The Indictment does not allege merely that the defendants made false statements about factors outside their own control, such as "that the value of Celadon's used trucks had fallen due to prices in the used truck market." *See* Peavler Mot. at 2.   Rather, the Indictment alleges how, when they traded old trucks for newer ones, the defendants made sure to exchange invoices with inflated prices so they could conceal that Celadon's trucks had declined in value.   Similarly, the Indictment alleges how, when negotiating the fourth trade transaction, the defendants intentionally staggered the payments to

---

[3] Count 8 contains a similar allegation.   *See* Indictment ¶ 41(a).

10

straddle the quarter-end so Celadon could appear financially healthier than it really was, and so it did not breach the terms of its bank loan.   Thus, the misstatements alleged in Counts 1, 7, and 8 were not made in isolation but rather were the culmination of a series of the defendants' deceptive acts.

### B.     The False Statements Alleged in Counts 1, 7, and 8 Are Violations of 18 U.S.C. § 1348(2)

The conduct charged in the Indictment constitutes the sort of fraud by false pretenses and representations that Section 1348(2) criminalizes.   Peavler's push to narrow the scope of Section 1348(2) lacks any basis in law or logic.

The Seventh Circuit has long held that "[i]t requires no extended discussion of authority to demonstrate that omissions or concealment of material information can constitute fraud[.]" *United States v. Keplinger*, 776 F.2d 678, 697 (7th Cir. 1985); *see also United States v. Mahaffy*, 693 F.3d 113, 125 (2d Cir. 2012) (holding that the government may "prove false representations or material omissions, which are required to secure convictions . . . under 18 U.S.C. 1348(2)"). This rule has been consistently applied in the context of mail and wire fraud offenses under sections 1341 and 1343, whose text, like securities fraud under Section 1348(2), contains no mention of "material omissions."

As particularly relevant here, the Seventh Circuit has routinely held that fraud "includes both statements that the defendant knows to be false, as well as a 'half truth' that the defendant knows to be misleading and which the defendant expects another to act upon to his detriment and the defendant's benefit."   *United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005); *see also United States v. Powell*, 576 F.3d 482, 490–91 (7th Cir. 2009) (defendant's "failure to give . . . the whole story" constituted fraud).   Furthermore, "[t]he mere failure to disclose information will not always constitute fraud, but an omission accompanied by acts of concealment or affirmative

11

misrepresentations can constitute fraud." *Stephens*, 421 F.3d at 507; *see also United States v. Biesiadecki*, 933 F.2d 539, 543 (7th Cir. 1991) ("Fraud can arise not only through affirmative misrepresentations but also through concealment of material facts.");

These principles apply equally to securities fraud under Section 1348(2). The operative statutory language is nearly identical. Indeed, the Seventh Circuit has specifically observed that "[s]everal courts have recognized that because the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes, an analysis of Section 1348 should be guided by the caselaw construing those statutes." *United States v. Coscia*, 866 F.3d 782, 799 (7th Cir. 2017) (internal quotation marks omitted); *see also id.* ("Because section 1348 was modeled on the federal mail and wire fraud statutes, the district court certainly was on solid ground in looking to the pattern jury instruction for those offenses."); *United States v. Mahaffy*, No. 05-CR-613, 2006 WL 2224518, at *11 (E.D.N.Y. Aug. 2, 2006) ("[B]ecause the text and legislative history of [Section] 1348 clearly establish that it was modeled on the mail fraud and wire fraud statutes, it is useful to be guided by the numerous and well-established precedents on those statutes in construing [Section 1348].").

Furthermore, the intent behind Section 1348, enacted after the stunning accounting fraud scandals at Enron and WorldCom, was to "provide a flexible tool to allow prosecutors to address the wide array of potential fraud and misconduct which can occur in companies that are publicly traded." *See, e.g.*, 148 Cong. Rec. S7418-01 (daily ed. July 26, 2002) (statement of Sen. Leahy) (noting that Section 1348 "would supplement the patchwork of existing technical securities law violations with a more general and less technical provision"). In that sense, courts have recognized that "Section 1348 was intended to provide prosecutors with a different—*and broader*—enforcement mechanism to address securities fraud than what had been previously

provided in the Title 15 fraud provisions." *Blaszczak*, 947 F.3d at 36–37 (emphasis added); *see also United States v. Motz*, 652 F. Supp. 2d 284, 294 (E.D.N.Y. 2009) (Congress's "overarching purpose" in enacting 18 U.S.C. § 1348 "was to broaden the range of conduct proscribed by existing federal securities laws").

Even under the narrower provisions of Title 15 securities fraud, this Court has found that the statute criminalizes material omissions.   In *United States v. Durham*, this Court instructed that securities fraud includes not only when a defendant made an untrue statement of material fact, but also when a defendant "omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."   *See Durham*, No. 1:11-cr-00042-JMS-DML, ECF No. 353 (Final Jury Instructions), at 36.   Although *Durham* dealt with the Title 15 securities fraud provisions, the same scope applies here in the context of 18 U.S.C. § 1348.   *Cf. United States v. Melvin*, 143 F. Supp. 3d 1354, 1374 (N.D. Ga. 2015), *aff'd*, 918 F.3d 1296 (11th Cir. 2017) (noting "§ 1348 is a 'broader statute'" than Title 15 securities fraud provision).

To the extent Peavler argues that the scope of Section 1348(2) does not encompass "half-truths" or "omissions accompanied by acts of concealment or affirmative misrepresentations"— and is thus *narrower* than Title 15 securities fraud—he is wrong.   He cites no case on point for this proposition.   And his analysis of *United States v. Loughrin*, 573 U.S. 351 (2014), is inapposite.   In *Loughrin*, the Supreme Court declined to add a second mens rea element to the bank fraud offense under 18 U.S.C. § 1344(2).   573 U.S. at 366–67. Specifically, the Court declined to read the mens rea element in Section 1344(1) into Section 1344(2). *Id.*

Here, however, Counts 1, 7, and 8 of the Indictment do not add (or remove) elements from Section 1348(2) or seek to import elements from Section 1348(1) into 1348(2).   Instead, those

counts simply allege that the defendants perpetrated a scheme involving "false and fraudulent pretenses, representations, or promises."   Although in its analysis *Loughrin* contrasted aspects of the bank fraud and mail/wire fraud statutes, courts still, as outlined above, routinely look to the well-developed mail/wire fraud caselaw for guidance on the meaning of those terms.   Indeed, even the Seventh Circuit Criminal Pattern Jury Instructions for bank fraud under Section 1344(2) suggest that a trial court should look to the mail/wire fraud instructions in cases involving some allegation of omissions or concealment.   *See* Seventh Circuit Criminal Pattern Jury Instructions (2019), at 459.   Those authorities make clear that Section 1348(2) prohibits "half-truths" and "omissions accompanied by acts of concealment and affirmative misrepresentations"—which is precisely what the defendants are charged with under Counts 1, 7, and 8.

### C.   The Phrase "By Statements Containing Material Omissions" In The Charging Language of Counts 1, 7, and 8 Did Not Mislead the Grand Jury or Prejudice the Defendants

The phrase "by statements containing material omissions" in Counts 1, 7, and 8 simply reflects, and provides notice to the defendants, that those charges allege half-truths and omissions accompanied by acts of concealment and affirmative misrepresentations.   It was not a misstatement of the law, serious or otherwise.   It does not mean, particularly in this Indictment, "that any alleged 'material omission' was enough for indictment under Section 1348(2)."   Peavler Mot., at 16.[4]   Nor does it present a risk that the grand jury believed as much, such that it "substantially influenced the grand jury's decision to indict," or cast "grave doubt that the decision

---

[4] *See also* Peavler Mot. at 12 n.5 (phrase would "allow prosecution of any alleged omission"), 15 (phrase meant "defendants could be charged because of any 'omission' of publicly known facts"), 19 (phrase meant "all perceived material omissions were a violation of Section 1348(2)").

to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256 (internal quotations omitted).

First, the actual phrase used in the indictment itself makes clear that it pertains to false statements: "*statements containing* material omissions." It does not connote a standalone omissions theory. The phrase is shorthand for the common instruction in fraud cases that a defendant commits an offense if he "omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *E.g.*, *Durham*, No. 1:11-cr-00042-JMS-DML, ECF No. 353, at 36.

Second, the Indictment alleges the specific half-truths, omissions, acts of concealment, and affirmative misrepresentations that made the quarterly reports in Counts 7 and 8 allegedly false and misleading. *See* Indictment ¶¶ 36, 41. They included affirmatively reporting figures based on prices paid for new trucks, while knowing and failing to disclose that those prices were intentionally inflated for the purpose of concealing declining truck values. *Id.* ¶¶ 36(a), 41(a). And, they included affirmatively reporting that Celadon had received $25 million from a truck dealer before quarter-end (and therefore was in compliance with its bank loan terms), while knowing and failing to disclose that, as part of receiving the $25 million, Celadon was obligated to pay $27 million back to the same truck dealer just days later. *Id.* ¶ 36(b). Moreover, as noted above, those allegations pertained to a series of transactions that the defendants allegedly devised to further their scheme. Thus, between the specificity of those allegations, their relation to other acts of deception and concealment, and their express relation to Counts 1, 7, and 8, it is clear that those allegations are the sort that "substantially influenced the grand jury's decision to indict." *Bank of Nova Scotia*, 487 U.S. at 256.

15

Conversely, the notion that the mere mention of words "material omissions" caused the grand jury to vote to indict on Counts 1, 7, and 8 simply because the defendants allegedly failed to disclose declining truck values or a declining truck market is speculative at best.   Such allegations merely provided context for the defendants' truck trades, inflated invoices, staggered payments, and lies to auditors—the actual basis for the false statements scheme correctly alleged, in detail, under Section 1348(2) in Counts 1, 7, and 8.

### III.   There Is No Need For The Grand Jury Transcript

Grand jury material is presumptively secret under Federal Rule of Criminal Procedure 6(e). Parties must show a "particularized need" for grand jury material to require disclosure.   *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 217–24 (1979); *see also United States v. Tingle*, 880 F.3d 850, 855 (7th Cir. 2018).   This standard applies to the disclosure of legal instructions to the grand jury too.   *United States v. Barry*, 71 F.3d 1269, 1274 (7th Cir. 1995); *see also United States v. Stepanyan*, No. CR 15-0234 CRB (JSC), 2016 WL 4398281, at *2 (N.D. Cal. Aug. 18, 2016) ("[C]ourts have uniformly rejected the argument that the government's instructions or remarks to the grand jury are not entitled to secrecy.").   To show a particularized need, Peavler must demonstrate "that the material [he] seek[s] is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only material so needed."   *Tingle*, 880 F.3d at 855.

He cannot make this showing because the Indictment is facially valid.   As described above, including the phrase "statement containing material omissions" in the changing language of Counts 1, 7, and 8 poses no prejudice to the defendants.   Even if a standalone omission theory were legally improper under Section 1348(2), the Indictment does not allege one.   Rather, Counts

1, 7, and 8 allege that the defendants made false statements to investors and others, which is squarely within the scope of Section 1348(2).

With a facially valid indictment, there is no basis or "particularized need" upon which to require disclosure of the prosecutor's legal instructions to the grand jury.   *See, e.g.*, *United States v. Espy*, 23 F. Supp. 2d 1, 10 (D.D.C. 1998) ("the facially valid indictment undermines any 'particularized need' the alleged grand jury instructions demonstrate for disclosure of the grand jury transcripts."); *United States v. Apodaca*, 287 F. Supp. 3d 21, 49–50 (D.D.C. 2017) (same); *United States v. Nacchio*, No. 05-CR-00545-EWN, 2006 WL 8439745, at *10 (D. Colo. Aug. 25, 2006) (same); *United States v. Trie*, 23 F. Supp. 2d 55, 62 (D.D.C. 1998) (finding where "the indictment is facially valid" that "the mere suspicion that the grand jury may not have been properly instructed ... is insufficient to establish that [the defendant] is entitled either to dismissal of the indictment or to disclosure of grand jury materials").

## **CONCLUSION**

Based on the foregoing, the United States respectfully requests that the Court deny Peavler's Motion to dismiss Counts 1, 7, and 8.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

Date:    July 31, 2020        By:   /s/   Nicholas J. Linder
L. Rush Atkinson
Kyle W. Maurer
U.S. Department of Justice, Criminal Division
1400 New York Avenue NW
Washington, DC 20005

Nicholas J. Linder
Steven D. DeBrota
Assistant United States Attorneys

17

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2020, a copy of the foregoing response was filed electronically.   Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.   Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.   Parties may access this filing through the court's system.

Sean M. Berkowitz
Joshua G. Hamilton
Eric R. Swibel
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

*Counsel for William Eric Meek*

Sergio E. Acosta
Michael P. Kelly
Ildefonso P. Mas
Douglas B. Paul
Akerman LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606

*Counsel for Bobby Lee Peavler*

/s/ Nicholas J. Linder
Nicholas J. Linder
Assistant United States Attorney
United States Attorney's Office
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
(317) 226-6333
Nick.Linder@usdoj.gov