**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.  1:19-cr-378-JMS-MJD |
| ) | |
| WILLIAM ERIC MEEK, and ) | |
| BOBBY LEE PEAVLER, ) | -02 |
| ) | |
| Defendants. ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT BOBBY PEAVLER'S MOTION TO DISMISS COUNTS 10 AND 11 OF THE INDICTMENT**

The United States of America respectfully submits this memorandum in opposition to Defendant Bobby Peavler's Motion to Dismiss Counts 10 and 11 and its accompanying memorandum of law (ECF Nos. 71 and 72) (collectively "Peavler Motion").

**INTRODUCTION**

Peavler incorrectly argues that Counts 10 and 11 are multiplicitous to Counts 4 and 6. Under operative Supreme Court precedent, if one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity. As detailed below, the offenses charged in Counts 4 and 6 require at least <u>three</u> elements (scheme to defraud; intent to defraud; use of wires) that are not required to prove the offenses charged in Counts 10 and 11.  Separately, Counts 10 and 11 require at least <u>four</u> elements (actual falsity; company director or officer; accountant audience; connection to an audit or SEC filing) that are not required to prove the offenses charged in Counts 5 and 6.  There is therefore no multiplicity among the counts, and the Motion should be denied.

## FACTUAL BACKGROUND

The Indictment charges Eric Meek and Bobby Peavler with various fraud and false statement offenses. (ECF No. 62-1, Amended Indictment).

Relevant here, Counts 4 and 6 allege that Peavler and Meek (and others) caused the transmission of the two management representations letters by interstate wire. The indictments allege that these wires were in furtherance of a scheme "to: (a) conceal Celadon's true financial condition from Celadon's shareholders, banks, the investing public, independent auditors, and regulators; and (b) unjustly enrich themselves through their continued receipt of compensation and other benefits." (Indictment ¶ 18).

In addition, Counts 10 and 11 charge Peavler with making false statements to Celadon's auditor, Accounting Firm 1, in two "management representation letters" signed by Peavler in connection with the company's quarterly audit.[1]

## LEGAL BACKGROUND

### The *Blockburger* Test for Multiplicity

"If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity." *United States v. Marquardt*, 786 F.2d 771, 778 (7th Cir. 1986) (quoting *United States v. Briscoe*, 742 F.2d 842, 845 (5th Cir. 1984)). The Supreme Court, in *United States v. Dixon*, reaffirmed that the same-elements test—also known as the *Blockburger* test—applies in "both the multiple punishment and multiple prosecution contexts." 509 U.S. 688, 696 (1993) (citing *Blockburger v. United States*, 284 U.S. 299 (1932));

---

[1] "Management representation letters" are letters prepared by external auditors and signed certain company executives, in which the executives attest to the veracity of the financial statements and certain issues that may be at specific issue during an audit. Auditors commonly require such letters to be executed in order to finalize its quarterly audit of the company's financial statements.

*United States v. Hatchet*, 245 F.3d 625, 631 (7th Cir. 2001) ("*Dixon* re-established the 'same elements' test articulated by *Blockburger* as the one and only test that courts are to apply in considering whether a defendant may be prosecuted or punished twice based on a single act or transaction."). "A person may not be convicted and punished for two separate offenses arising out of the same act unless each offense requires proof of a fact which the other does not." *United States v. Larsen*, 615 F.3d 780, 786 (7th Cir. 2010) (internal quotations omitted).

When the same act or transaction serves as the basis for two separate charges, both charges are appropriate if "each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. 299, 304 (1932). "The Double Jeopardy Clause permits successive punishment or prosecution of multiple offenses arising out of the same conduct only if each offense contains a unique element." *United States v. Edwards*, 836 F.3d 831, 836 (7th Cir. 2016) (citing *Dixon*, 509 U.S. at 696). *See also United States v. Hutchins*, 361 F. Supp. 3d 779, 796 (E.D, Wis. 2019) ("Each count contains an element required to prove the offense that is not required in the other count, and the counts require proof of different facts. There is no multiplicity."); *Albernaz v. United States*, 450 U.S. 333, 338 (1981).

Importantly, while applying the *Blockburger* test, the court is to "look solely to the statutes, rather than the facts of a particular matter, to see if each requires proof of a fact which the other does not." *United States v. Wheeler*, 753 F.3d 200, 209 (D.C. Cir. 2014) (internal quotation marks and alterations omitted). As the Seventh Circuit has explained, in "[a]pplying the *Blockburger* test, we focus on the statutory elements of the charged offenses, not the overlap in the proof offered to establish them, because a single act may violate several statutes without rendering those statutes identical." *United States v. Muhammad*, 120 F.3d 688, 703 (7th Cir. 1997); *see also United States v. Starks*, 472 F.3d 466, 469 (7th Cir. 2006) (quoting *Muhammad*); *see also Rutledge v. United*

3

*States*, 517 U.S. 292, 300 (1996) (noting the *Blockburger* test requires review of the plain language of the elements).

### Wire Fraud

Counts 4 and 6 charge Peavler with violations of 18 U.S.C. § 1343, which provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years.

"To convict a person under § 1343, the government must prove that he '(1) was involved in a scheme to defraud; (2) had an intent to defraud; and (3) used the wires in furtherance of that scheme.'" *United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016) (quoting *United States v. Faruki*, 803 F.3d 847, 852 (7th Cir. 2015)); *United States v. Powell*, 576 F.3d 482, 490 (7th Cir. 2009) ("To convict a defendant of wire fraud, the government must prove three elements: (1) the defendant participated in a scheme to defraud; (2) the defendant intended to defraud; and (3) a use of an interstate wire in furtherance of the fraudulent scheme.").

### False Statements to Accountants

Counts 10 and 11 charge Peavler with lying to Celadon's auditors, in violation of 15 U.S.C. § 78ff and 17 C.F.R. §§ 240.13b2-2(a), 240.13b2-2(b). Section 78ff of Title 15 criminalizes willful violations of both Title 15 as well as any rule or regulation made pursuant to 15 U.S.C. § 78 (known as the "Securities Exchange of 1934")[2], such as 17 C.F.R. §§ 240.13b2-2(a), 240.13b2-2(b). Those

---

[2] The operative text reads: "Any person who willfully violates any provision of this chapter . . . or any rule or regulation thereunder . . . shall upon conviction be fined not more than $5,000,000, or imprisoned not more than 20 years, or both." 15 U.S.C. § 78ff.

4

rules, enacted by the U.S. Securities and Exchange Commission ("SEC") to protect the integrity of the U.S. public markets, proscribe directors and officers of publicly traded companies from making false statements to their auditors:

> (a) No director or officer of an issuer shall, directly or indirectly: (1) Make or cause to be made a materially false or misleading statement to an accountant in connection with; or (2) Omit to state, or cause another person to omit to state, any material fact necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with: (i) Any audit, review or examination of the financial statements of the issuer required to be made pursuant to this subpart; or (ii) The preparation or filing of any document or report required to be filed with the [U.S. Securities &] Commission pursuant to this subpart or otherwise.
>
> (b) (1) No officer or director of an issuer, or any other person acting under the direction thereof, shall directly or indirectly take any action to coerce, manipulate, mislead, or fraudulently influence any independent public or certified public accountant engaged in the performance of an audit or review of the financial statements of that issuer that are required to be filed with the Commission pursuant to this subpart or otherwise if that person knew or should have known that such action, if successful, could result in rendering the issuer's financial statements materially misleading.

17 C.F.R. §§ 240.13b2-2(a), 240.13b2-2(b); *see also United States v. Turner*, No. CR05-355C, 2007 WL 983124, at *5 (W.D. Wash. Mar. 26, 2007) ("[T]he essential terms of Rule 13b2-2(a) . . . provide that no 'director or officer of an issuer,' shall 'directly or indirectly' (1) '[m]ake or cause to be made a materially false or misleading statement to an accountant' or (2) '[o]mit to state, or cause another person to omit to state, any material fact necessary [in order] to make statements made, in light of the circumstances under which such statements were made, not misleading' 'in connection with" an "audit[, review] or examination of the [issuer's] financial statements' or the 'preparation [or filing] of any document or report [required] to be filed with the Commission.'" (alterations in original)).

5

To prove a willful violation of the lying-to-accountant provisions, the government must prove: (1) the defendant was a director or officer of an issuer; (2) the defendant made a statement to an accountant; (3) the defendant made a statement that was false or omitted material fact necessary in order to make the statement made, in light of the circumstances under which such statements were made, not misleading; (4) the statement was made in connection with any audit, review, or examination of the financial statements of the issuer required to be made pursuant to SEC regulations; and (5) the defendant acted knowingly and willfully. *See United States v. Wilson*, 879 F.3d 795, 806 (7th Cir. 2018) (affirming conviction where defendant "acted knowingly and willfully when making materially false statements to an outside accountant").

## **DISCUSSION**

Contrary to Peavler's arguments, Counts 10 and 11 (charging false statements to accountants) are not multiplicitous of Counts 4 and 6 (charging wire fraud). The wire fraud charges contain elements that the lying-to-accountants charges do not, and the lying-to-accountants charges contain elements that the wire fraud charges do not. Thus, the Indictment passes the *Blockburger* test, and no count should be dismissed as unconstitutionally multiplicitous.

Specifically, the wire fraud charges requires at least three elements that are not required under the lying-to-accountants charges charged in the Indictment: (1) a scheme to defraud; (2) intent to defraud; and (3) use of interstate wires. Conversely, the lying-to-accountants charges have at least four elements that are not required under wire fraud: (1) the defendant was an officer, director; (2) the defendant made a false statement or omitted material facts; (3) the statements or omissions were directed to an accountant; and (4) the statement were made in connection with an audit or required SEC filings. These differences make it clear that the charges in question are not multiplicitous and should not be dismissed.

### I. Courts Have Repeatedly Found that Fraud and False Statements Are Not Multiplicitous to One Another

Before turning to the specific statutes at hand, it is worth noting that courts have regularly rejected arguments that false statement statutes are multiplicitous to fraud statutes like the ones in question here. Indeed, in his motion, Peavler concedes that his argument on multiplicity runs afoul of Seventh Circuit case law in *United States v. Abu-Shawish*. 175 F. App'x 41 (7th Cir. 2006). In *Abu-Shawish*, the Seventh Circuit considered whether a defendant's convictions for both bank fraud (in violation of 18 U.S.C. § 1344) and false statements to a financial institution (in violation of 18 U.S.C. § 1014) were multiplicitous. *Abu-Shawish*, 175 App'x at 42–43. The Seventh Circuit quickly concluded that the charges were not multiplicitous: "the *Blockburger* test is easily satisfied because § 1344 requires proof of a 'scheme or artifice to defraud' and § 1014 requires proof of a false statement, neither of which is required by the other." *Id.* at 44.

The *Abu-Shawish* decision reached the same conclusion as other courts that have considered whether fraud statutes and false statements statutes are multiplicitous. "The First, Second, Fifth, Seventh, Eighth, and Ninth Circuits have all reached the same conclusion that both § 1344 and § 1014 contain elements not found in the other so that the *Blockburger* test for separate offenses has been met." *United States v. Shulick*, No. CR 16-428, 2017 WL 11485916, at *3 (E.D. Pa. May 23, 2017); *see, e.g.*, *United States v. Fraza*, 106 F.3d 1050, 1054 (1st Cir. 1997) (finding that "because it is possible to violate either statute without violating the other," bank fraud changes and charges for making a false statement to a financial institution were not multiplicitous); *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999) (holding that charges for bank fraud and making false statements in a loan application were not multiplicitous because "there is a fundamental difference between a scheme to defraud and a false statement."); *United States v. Nash*, 115 F.3d

7

1431, 1438 (9th Cir. 1997) (holding that bank fraud and false statements charges are not multiplicitous of each other); *United States v. Dupre*, 117 F.3d 810, 818 (5th Cir. 1997).

Courts have rejected multiplicity arguments in other statutes and false statement statutes outside of bank fraud and § 1014 false statement charges. In *United States v. Wheeler*, the court rejected a motion to dismiss an indictment's charges of false statements relating to health care matters (in violation of 18 U.S.C. § 1035) as multiplicitous to charges of health care fraud (in violation of 18 U.S.C. § 1347). *United States v. Wheeler*, 889 F. Supp. 2d 64 (D.D.C. 2012), *aff'd*, 753 F.3d 200 (D.C. Cir. 2014). The *Wheeler* court noted that the health care fraud statute required a "scheme to defraud" that false statements counts did not, while the false statements counts required proof of false statements that the health care fraud statute did not. *Id.* at 71–72 (noting that "to obtain a conviction under § 1347, the government was not required to show that a false statement was made at all").[3]

The government could identify only one instance in which a court has found that fraud charges are multiplicitous to a false statement charge—and the holding of that case was overturned by the Supreme Court for the same reasons Peavler's Motion should be denied here. In *United States v. Seda*, the Second Circuit found that bank fraud and false statement charges were multiplicitous because the "same conduct" served as the basis for separate charges. 978 F.2d 779, 782 (2d Cir. 1992). One year later, the Supreme Court, in *United States v. Dixon*, held that the

---

[3] In affirming the district court's decision in *Wheeler*, the D.C. Circuit noted a separate difference between the statutes, namely that "that § 1347 merely requires an attempt to execute a scheme or artifice to defraud, whereas § 1035 requires actual falsification or making a false or fraudulent statement," *United States v. Wheeler*, 753 F.3d 200, 209 (D.C. Cir. 2014) (concluding that this distinction meant "some violations of § 1347 might not be violations of § 1035"). The same distinction applies here—wire fraud merely requires an attempt to execute a scheme or artifice to defraud, whereas the false statements counts require actual false statements to be made to the company's accountants.

8

"same conduct" test lacked constitutional roots and reaffirmed that *Blockburger* was the proper test for multiplicity challenges. 509 U.S. 688, 704 (1993).

While he asserts otherwise, Peavler's arguments are all variations of the "same conduct" test squarely rejected by *Dixon*. *See* Peavler Motion, at 5. However, as is clear in both the Seventh Circuit and all other circuits, charges are only multiplicitous when they contain the same elements, which does not apply when a defendant is charged with both fraud and giving a false statement. The fraud and false statement provisions relevant to this case are entirely analogous to the statues analyzed in the multiplicity cases described above. The same analysis, and the same rejection of multiplicity claims, is warranted.

**II.     Counts 4 and 6 Require Proof of Elements Counts 10 and 11 Do Not; and Vice Versa**

    **A.     Counts 4 and 6 Require Proof of a "Scheme to Defraud" Without Proof of Falsity; Counts 10 and 11 Requires Proof of Falsity Without Proof of a Scheme to Defraud**

For Peavler to be convicted of wire fraud as charged in Counts 4 and 6, the Government must prove that the defendant knowingly devised or participated in a "scheme to defraud." *Weimert*, 819 F.3d at 355. As provided in the Seventh Circuit jury instructions:

> A scheme to defraud a [victim] is a plan or course of action that is intended to deceive or cheat that [victim] or to obtain money or property or to cause the potential loss of money or property. A scheme to defraud need not involve any specific false statement or misrepresentation of fact.

Fed. Crim. Jury Instr. 7th Cir. 1344(1)[2] (2019 ed.).[4] "As its ordinary meaning suggests, the term 'scheme to defraud' describes a broad range of conduct, some which involve false statements or

---

[4] Peavler argues at one point that a "long line of published Seventh Circuit cases have . . . [held] that a scheme to defraud necessarily requires the making of a false statement or omission," (Peavler Motion, at 8), without noting the Seventh Circuit jury instruction on scheme to defraud says exactly the opposite. *See also Doherty,* 969 F.2d at 429 ("[O]ne need not make a false representation to execute a scheme to defraud."). The cases Peavler cites do not stand for the proposition that a scheme to defraud must allege false statements. Rather, they simply reflect the fact that wire fraud

9

misrepresentations of fact and others which do not." *United States v. Doherty*, 969 F.2d 425, 429 (7th Cir. 1992) (internal citation omitted). The Seventh Circuit has "explicitly recognized—both before and after publication of those instructions—that a course of conduct not involving any factual misrepresentation can be prosecuted as a 'scheme to defraud' under the mail and wire fraud statutes." *Id.*

To convict Peavler under Counts 10 and 11, the government does not have to prove that the false statements came as part of any "plan or course of action" or similar scheme. At the same time, the lying-to-auditors counts do require the government show a defendant "made materially false or misleading statements." *Wilson*, 879 F.3d at 805; *see also Goyal*, 629 F.3d at 916 ("The government therefore had to prove [for lying-to-auditors counts] that Goyal voluntarily made statements to PwC that he knew were false.").

Together, one sees what the Second Circuit described as a "fundamental difference between a scheme to defraud and a false statement." *Chacko*, 169 F.3d at 146. The wire fraud counts (Counts 4 and 6) require proof of a "scheme to defraud" but do not require the government to establish actual falsity; whereas, the lying-to-auditor counts (Counts 10 and 11) require proof of actual false statements without proof of a scheme to defraud. The wire fraud counts and the lying-to-auditors counts therefore each have an element the other lacks, and under *Blockburger* there is no multiplicity between them.

---

presents two separate avenues for prosecution, one involving a scheme to defraud (as defined above) and the other a scheme to obtain money or property by means of false statements. *See* Peavler Motion, at 8 (citing *United States v. Powell*, 576 F.3d 482, 490 (7th Cir. 2009)).

### B. Counts 4 and 6 Require Proof of "Intent to Defraud"; Counts 10 and 11 Do Not

For Peavler to be convicted of wire fraud as charged in Counts 4 and 6, the Government must also prove that the defendant acted with the specific "intent to defraud." *Weimert*, 819 F.3d at 355. "Intent to defraud requires proof that the defendant acted willfully 'with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another.'" *Id.* at 355 (quoting *Faruki*, 803 F.3d at 853). As provided in the Seventh Circuit jury instructions: "A person acts with intent to defraud if he acts knowingly with the intent to deceive or cheat the victim in order to cause a gain of money or property to the defendant or another or the potential loss of money or property to another." Fed. Crim. Jury Instr. 7th Cir. 1341 & 1343[5] (2019 ed.).

In contrast, Counts 10 and 11 only require that the statements or material omissions were "knowingly and willfully made." *Wilson*, 879 F.3d at 805; *Goyal*, 629 F.3d at 916 (government must prove that defendant "voluntarily made statements to [auditor] that he knew were false"). No specific intent to deceive or cheat is required; the defendant must only intentionally lie to the accountant. *See, e.g.*, *McConville v. U.S. S.E.C.*, 465 F.3d 780, 789 (7th Cir. 2006) (finding chief financial officer violated 17 C.FR. § 240.13b2-2 when "she lied to Deloitte in the two management representation letters she signed" without considering whether there was a specific intent to defraud anyone).

This distinction has a meaningful difference here. For example, a jury might decide that Peavler did not intend to act with specific intent to deceive or cheat (i.e., he had no financial motive). However, the jury may nonetheless conclude that Peavler deliberately lied to accountants for some other motive—for example, to hide prior mistakes or the company's poor performance.

11

Under that circumstance, the jury could convict Peavler on Counts 10 and 11 but not on Counts 4 and 6.

    **C.    Counts 4 and 6 Require Proof of Use of Interstate Wires; Counts 10 and 11 Do Not**

Counts 4 and 6 require proof that the defendant "transmit[ted] or cause[d] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343. Counts 10 and 11 do not require such proof. The defendant concedes this element of 18 U.S.C. § 1343 is not an element of 15 U.S.C. § 78ff and 17 C.F.R. §§ 240.13b2-2(a) and 240.13b2-2(b). (Peavler Motion, at 6).

    **D.    Counts 10 and 11 Require Proof That Peavler Was a Director or Officer of Celadon; Counts 4 and 6 Do Not**

To prove Peavler is guilty of making false statements to a public company's accountants, there are multiple required elements that are not present in § 1343. Counts 4 and 6 require the government that the defendant was a "director or officer of an issuer." 17 C.F.R. § 240.13b2-2(a). For these counts, it is necessary for the government to prove that not only did Peavler make a false statement, but that he acted from a specific position of power.

The wire fraud statute, by comparison, contains no element specifying what occupation or role a defendant must be in order to be in violation of the statute. 18 U.S.C. § 1343. Wire fraud covers "a broad range of conduct" covering individuals regardless of their position. *See Doherty*, 969 F.2d at 429.

    **E.    Counts 10 and 11 Require the Conduct Was Directed to an Accountant; Counts 4 and 6 Do Not**

For Peavler to be convicted as charged in Counts 10 and 11, the government must prove that the "made materially false or misleading statements to, or omitted material facts from, <u>an</u>

accountant." *Wilson*, 879 F.3d at 805 (emphasis added). The elements of Counts 10 and 11 therefore include that a specific requirement that the target of the false statements is an account.

By contrast, the wire fraud counts charged in Counts 4 and 6 do not require proof that false statements were made to an accountant. Wire fraud covers "a broad range of conduct" targeting innumerable types of victims. *See Doherty*, 969 F.2d at 429. The government is not required to prove any distinguishing characteristic about a victim to convict a defendant under wire fraud.[5]

Additionally, looking at the indictment in this case, Counts 4 and 6 allege additional victims besides Celadon's auditors. The indictment alleges that the purpose of the scheme was to deceive "shareholders, banks, the investing public, independent auditors, and regulators." (Indictment ¶ 18). The multitude of victims identified in the indictment make clear that the jury could convict Peavler of Counts 4 and 6 without concluding he lied to or otherwise defrauded Celadon's accountants.

### F. Counts 10 and 11 Require the Conduct Occurred in Connection to an Audit or SEC Filing; Counts 4 and 6 Do Not

For Peavler to be convicted as charged in Counts 10 and 11, the government must prove the he made material false statements or omissions in connection to "(i) [a]ny audit, review or examination of the financial statements of the issuer required to be made pursuant to [U.S. securities regulations]; or (ii) [t]he preparation or filing of any document or report required to be filed with the [U.S. Securities &] Commission pursuant to this subpart or otherwise." 17 C.F.R. § 240.13b2-2(a),

---

[5] In contrast, other fraud statutes do require proof of a victim. For example, bank fraud, 18 U.S.C. § 1344(1), requires the government to prove that the victim of the fraud was a "financial institution" as defined in 18 U.S.C. § 20.

By contrast, the wire fraud counts charged in Counts 4 and 6 do not require proof that false statements were made in connection with any specific proceeding, much less an audit or SEC filing.[6] Again, wire fraud covers "a broad range of conduct" targeting innumerable victims. *See Doherty*, 969 F.2d at 429. The government is not required to prove the acts were made in connection to any proceeding or event.

### III. Peavler's Additional Arguments Are Misplaced

Peavler's remaining arguments are unpersuasive or do not follow the appropriate *Blockburger* analysis. At one point, Peavler argues that the "closest case on point" is *United States v. Peel*, 595 F.3d 763 (7th Cir. 2010). (Peavler Motion, at 7). The *Peel* case involved child pornography, infidelity, divorce, and blackmail. *Id.* at 765. During the pendency of a bankruptcy proceeding—in which the defendant sought to discharge financial obligations to his ex-wife—Peel told his ex-wife that unless she signed a draft settlement agreement, he would release "nude photographs of her sister." *Id.* at 766. Peel was subsequently convicted of, among other things, bankruptcy fraud and obstruction of justice (not false statements).[7] *Id*. On appeal, the Seventh Circuit held that these two counts were multiplicitous and remanded with instructions "that the judge vacate either the bankruptcy fraud conviction or the obstruction of justice conviction" and then resentence the defendant. *Id.* at 774.

Applying *Blockburger*, the *Peel* court concluded that "convicting Peel of obstruction of justice did not require proof of any fact that didn't have to be proved to convict him of bankruptcy

---

[6] In contrast, other fraud statutes do require proof that the conduct fell within the scope of a proceeding. For example, bankruptcy fraud requires the conduct be connected to the "fil[ing of] a petition under title 11" or otherwise arises out of a "proceeding under title 11." 18 U.S.C. § 157.

[7] Peel was convicted of violating 18 U.S.C. § 152(6), which makes it a criminal offense to knowingly and fraudulently offer compensation for forbearing to act in any case under the Bankruptcy Code.

fraud." *Id.* at 775. But had Peel been convicted of bankruptcy fraud and false statements—or convicted of obstruction of justice and false statements—there would have been no multiplicity issue, because neither bankruptcy fraud nor obstruction of justice requires proof of a false statement. Indeed, there was no allegation of a false statement in the case Peel case at all; the matter involved pure and simple blackmail.[8] Peavler's efforts to analogize this case to *Peel* are misplaced.

At another point in his brief, Peavler misapplies the Supreme Court's case of *Rutledge v. United States*, 517 U.S. 292 (1996). (Peavler Motion, at 7). In *Rutledge*, the defendant was charged with (1) conducting a continuing criminal enterprise, and (2) conspiring to distribute cocaine. 517 U.S. at 292. The *Rutledge* Court determined that these charges were multiplicitous because both charges described the same conduct in different words ("in concert with" vs. conspiracy). *Id*. at 300.

Counter to Peavler's assertions, *Rutledge* proves how the instant case is not merely the use of different words to mean the same thing. "A scheme or artifice to defraud includes any plan, pattern or cause of action, including false and fraudulent pretenses and misrepresentations, intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived." *Chacko*, 169 F.3d at 148 (internal quotations omitted). In no way can the plain-language reading of a "scheme to defraud" be substituted for "made a statement that was false or omitted material fact necessary," as Peavler attempts to argue. For *Rutledge* to apply in the instant case, Counts 10 and 11 would have to require a "plot to swindle" or a "plan to bilk" in order for the charges to be as substantively alike as the charges in *Rutledge*. However, because wire

---

[8] Specifically, the facts of the *Peel* case illustrate how a scheme to defraud does <u>not</u> require actual false statements. *See supra*, at p. 9–10.

15

fraud can be proved without the defendant making a false statement, and Counts 10 and 11 can be proved without the defendant engaging in a scheme to defraud, the elements are not so alike as that they should be considered interchangeable.

## CONCLUSION

Under *Blockburger*, "if one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity." *Marquardt*, 786 F.2d at 778.  As described above, the offenses charged in Counts 4 and 6 have at least <u>three</u> elements (scheme to defraud; intent to defraud; use of wires) that are required to be proved the offenses charged in Counts 10 and 11.[9]  Separately, Counts 10 and 11 have at least <u>four</u> elements (actual falsity; company director or officer; accountant audience; connection to an audit or SEC filing) that are not required to be proved the offenses charged in Counts 5 and 6.  There is therefore under *Blockburger* no multiplicity among the counts, and the motion to dismiss Counts 10 and 11 should be denied.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

Date:   July 31, 2020         By:   /s/  Nicholas J. Linder
L. Rush Atkinson
Kyle W. Maurer
U.S. Department of Justice, Criminal Division
1400 New York Avenue NW
Washington, DC 20005

Nicholas J. Linder
Steven D. DeBrota
Assistant United States Attorneys

---

[9] If the Court counts the "attempt" language of 18 U.S.C. § 1343 separate from the "scheme to defraud," as the D.C. Circuit did in *Wheeler*, 753 F.3d at 209, then there are at least <u>four</u> elements founds in Counts 4 and 6 that do not appear in Counts 10 and 11.  See *supra*, footnote 5.

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2020, a copy of the foregoing response was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

Sean M. Berkowitz
Joshua G. Hamilton
Eric R. Swibel
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

*Counsel for William Eric Meek*

Sergio E. Acosta
Michael P. Kelly
Ildefonso P. Mas
Douglas B. Paul
Akerman LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606

*Counsel for Bobby Lee Peavler*

/s/ Nicholas J. Linder
Nicholas J. Linder
Assistant United States Attorney
United States Attorney's Office
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
(317) 226-6333
Nick.Linder@usdoj.gov