# EXHIBIT 1

| | |
|---|---|
| **From:** | Acosta, Sergio (Ptnr-Chi) |
| **Sent:** | Friday, January 10, 2020 4:43 PM |
| **To:** | Linder, Nick (USAINS); Atkinson, Lawrence (CRM) |
| **Cc:** | 'Maurer, Kyle (CRM)'; 'Steve.DeBrota@usdoj.gov'; Sean.Berkowitz@lw.com; 'Joshua.Hamilton@lw.com'; Paul, Douglas (Ptnr-DC); Kelly, Michael (Ptnr-DC) |
| **Subject:** | US v. Meek & Peavler, 19 CR 378 - Request for Information |
| **Attachments:** | Ltr to Linder & Atkinson 1.10.20.PDF |

Nick and Rush,

Please see the attached correspondence. Happy to discuss at your convenience. Thanks, Sergio

**Sergio E. Acosta**
Partner
Co-Chair, White Collar Crime and Government Investigations
Akerman LLP | 71 South Wacker Drive, 47th Floor | Chicago, IL 60606
D: 312 870 8025 | T: 312 634 5700 | F: 312 424 1900
sergio.acosta@akerman.com

# akerman

Sergio E. Acosta

Akerman LLP
71 South Wacker Drive
47th Floor
Chicago, IL 60606

T: 312 634 5700
F: 312 424 1900

January 10, 2020

**BY EMAIL AND U.S. MAIL**

Nicholas J. Linder, Esq.
United States Attorney's Office
Southern District of Indiana
100 West Market Street, Suite 2100
Indianapolis, IN 46204

L. Rush Atkinson, Esq.
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005

Re: *United States v. Meek, et al.*, Case No. 19-CR-378-JMS-MJD

Dear Messrs. Linder and Atkinson:

Thank you for your letter of December 17, 2019 with the attached production of 262 documents, as well as the subsequent production letter, chart, and production on January 3, 2020. We will begin to review the documents. As we understand our call on this issue on December 10, in addition to the above productions, the government intends to produce a number of smaller follow-on productions and the auditor's workpapers, which will be provided on a separate computer solely accessible through the former auditor's proprietary software. Thank you in advance for providing those productions.

In the meantime, to eliminate the possibility of any future misunderstandings, we also want to set forth the nature of our discovery requests. *See generally* S.D. Ind L.R. 37-1. We are writing to make our specific discovery requests pursuant to Rule 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio* v. *United States*, 405 U.S. 150 (1972), the Jencks Act, 18 U.S.C. § 3500, and Rule 404(b) of the Federal Rules of Evidence. This includes all materials described in Fed. R. Crim. P. 16(a)(1)(A), (B), (C), (D), (E), (F), and (G).

A.  **General Discovery Requests**

   1.  **Request for Open File Discovery**

   This letter sets forth a number of requests for specific categories and types of evidence, as set forth below. However, the requests are not intended to be exhaustive. To the contrary, we request that the United States Attorney's Office for the Southern District of Indiana and the U.S. Department of Justice, Criminal Division's Fraud Section agree to an "open file" approach to discovery. Among other things, open file discovery will help the parties avoid discovery-related disputes, including potential disputes related to the government's compliance with its obligations under *Brady v. Maryland.*

   2.  **Request for Production of Documents from the Entire Prosecution Team**

   We also request that the government conduct a search of the files of the U.S. Department of Justice ("DOJ"), the U.S. Securities and Exchange Commission ("SEC"), the Federal Bureau of Investigation ("FBI"), the U.S. Postal Inspection Service ("USPIS") and the Public Company Accounting Oversight Board ("PCAOB") (collectively the "government"). Please let us know the scope of your search so that we can seek appropriate relief if the search is not sufficiently broad.

   3.  **Request for *Brady/Giglio* Materials**

   Under *Brady*, the government is required to produce all evidence favorable to Mr. Peavler or Mr. Meek. *Brady*, 373 U.S. at 87; *Jells v. Mitchell,* 538 F.3d 478, 501-02 (6th Cir. 2008); *United States v. Boyd,* 55 F.3d 239, 244 (7th Cir. 1995) (citing *Giglio*, 405 U.S. at 154-55). In particular, the government has "an affirmative duty to disclose any evidence in its possession that is favorable to the defendant and is material to either the issue of guilt or punishment." *United States v. Bhutani, 175* F.3d 572, 576 (7th Cir. 1999). For instance, if the government has evidence or information that Mr. Peavler was not aware of or not involved in the alleged wrongdoing, or any portion thereof, or was trying to do the right thing, those materials should be produced immediately and promptly after it is discovered. *See generally U.S. DOJ Manual, Section 9-5.001 (C) and (D)(1)* ("department policy recognizes that exculpatory evidence is broadly defined and that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues . . . [and] make the difference between guilt and innocence").

   Under *Giglio*, the government is required to produce materials that may be relevant to the impeachment of any prosecution witness. 405 U.S. at 154 (describing *Giglio* material as "evidence affecting credibility" of a witness). This includes all statements by Danny Williams and any other individuals who allegedly participated or knew of a conspiracy and scheme to defraud, including materials that identify participants and their roles in the alleged conspiracy and scheme. Of course, if Mr. Williams said anything or took inconsistent positions with

respect to Mr. Peavler or Mr. Meek, that also qualifies as *Brady* material and should be produced immediately.

We have reviewed the chart titled Government Production 1 Index ("Index") provided with the January 3, 2020 production and the Index does not identify any materials as being either *Brady* or *Giglio* materials. Given that the production is over 6.4 million pages, we are requesting that the Index be updated to clearly identify the *Brady/Giglio* materials as such in your production. In addition, please clearly identify the *Brady/Giglio* materials as such in any future productions.

### 4. Request for Preservation

We further request that the government take affirmative steps to preserve all documents relating to Bobby Peavler and William "Eric" Meek; the Celadon Group, Inc. ("Celadon"); the Quality Companies ("Quality"); BKD LLP; the McCoy Group, Inc. and Truck Country/Stoops Freightliner – Quality Trailer ("Truck Country"); Bank of America; SunTrust; Scudder Law Firm; and their respective affiliates, subsidiaries, directors, officers, employees, representatives and agents; any alleged co-conspirator and/or aider and abettor; the Indictment in this matter; and any potential witness, including all documents covered by any request in this letter, regardless of whether or not the government believes they are discoverable. This preservation obligation is not limited to documents obtained from third parties. It also extends to government documents, notes (including but not limited to notes of interviews or proffers of any individual, including Mr. Peavler, Mr. Meek, and any alleged co-conspirator), emails, text messages, and other electronically stored information maintained by the government. If you are not willing to preserve all such documents, please notify us immediately so that we may take all necessary steps, including seeking intervention by the Court, to ensure such documents are preserved. *See United States v. Green,* No. 5:06-CR-00019-TBR, 2008 WL 5381849, at *2 (W.D. Ky. Dec. 19, 2008) (ordering the preservation of investigative materials, including rough notes).

In addition, we further request that the government preserve all documents related to Mr. Peavler, Mr. Meek, Mr. Williams, or any alleged co-conspirator that are in the possession of Celadon. The government is in a special position because it controls documents held by Celadon. Under paragraph 5 of Celadon's Deferred Prosecution Agreement, Celadon "shall cooperate fully with the Fraud Section and the Office in any and all matters relating to the conduct described" in the DPA, which includes "the obligation to provide to the Fraud Section and the Office, upon request, any document, record or other tangible evidence about which the Fraud Section or the Office may inquire of the Company." DPA at ¶5(a). *United States v. Stein,* 488 F. Supp. 2d 350, 369 (S.D.N.Y. 2007) (requiring the government under Rule 16 to produce documents in the possession of a party subject to DPA agreement with similar requirements). Because Celadon may be at risk of liquidation, we request that the government take immediate steps to preserve these documents and prevent their loss or destruction.

  5.  **Request for Prompt Notification of Withheld Materials**

We also request that the government provide prompt notification in the event that it has withheld any material on the basis of privilege or grand jury secrecy or for any other reason.

**B.  <u>Specifically Enumerated Requests</u>**

In an attempt to avoid potential discovery-related disputes with regard to the materials described above, we request that any materials produced identify the specific category or categories identified below to which the materials are responsive. In the index attached to your letter of January 3, 2020, there are almost three million pages labelled as "Miscellaneous Documents." We request that you supplement the index with more specific and detailed information as to the nature of these documents.

  1.  **Documents Related to the Government's Case-in-Chief**

Rule 16 requires the government to produce documents if the "government intends to use the item in its case-in-chief at trial." *See* Fed. R. Crim. P. 16(a)(1)(E)(ii). Accordingly, please produce every document that the government intends to introduce in its case-in-chief and identify the exhibits that the government intends to introduce in its case-in-chief. This request includes not only those materials that will be marked and offered into evidence, but also those materials that will be relied on or referred to in any way by any witness, including any expert witness, called by the government during its case-in-chief.

We request that any materials in this category be specifically identified from among the materials produced pursuant to the defendant's Rule 16 and *Brady* requests, both to enable counsel to prepare effectively for trial and to afford Mr. Peavler an opportunity to move to suppress any evidence the government intends to use in its case-in-chief. Fed. R. Crim. P. 12(b)(3)(C), (b)(4)(B). *See United States v. Meredith,* No. 3:12-CR-00143-CRS, 2015 WL, 5570033, at *1 (W.D. Ky. Sept. 22, 2015) ("The Government also provided Defendant with written directions on finding specific documents, a Discovery Index and color-coded Media Review Index, and orally explained how the Government used search terms in reviewing the documents."); *United States v. Mohammad,* No. 1:10CR389, 2012 WL 1605472, at *1 (N.D. Ohio May 8, 2012) (noting that the prosecution provided the defense with a hard drive containing ESI in searchable format with indices and with instructions on how to navigate the hard drive to review the discovery); *United States v. Slade,* No. CR-09-1492-PHX-ROS, 2011 WL 5291757, at *3 (D. Ariz. Sept. 30, 2011) (detailing several attempts by prosecution to assist the defense with voluminous ESI).

  2.  **Documents that are Material to Preparing the Defense**

Rule 16 also requires the prosecution to produce any item that "is material to preparing the defense." *See* Fed. R. Crim. P. 16(a)(1)(E)(i). Because they are in the government's possession and are "material to preparing the defense," please provide the following documents or information listed below. To the extent any of this information is listed in government reports that are not

required to be produced at this time, please transpose the information onto a letter and provide it to us. The terms "document" or "communications" should be read broadly to include, among other things, written or printed, notes, memoranda, drafts, copies, financial records, records, correspondence, e-mail, instant messages, voice messages, logs, spreadsheets, etc.

    a.    All documents and communications related to Bobby Peavler or William Eric Meek. This request includes but is not limited to images or copies of Mr. Peavler's and Mr. Meek's electronic communications (e.g. Lotus Notes, Outlook mailboxes and calendars, IM, text messages, etc.) or PST files, as well as images or copies of Mr. Peavler's and Mr. Meek's computer hard drives, cellular telephones, handheld devices and network drives, which were imaged by Celadon (or its counsel).

    b.    Email boxes of Robert Long, Paul Will, Steve Boyer, Matt Bova, Danny Williams, Leslie Tarble, Kathryn Wouters, Kathryn Schaefer, Scott Selm, Jake Rhinehart, Julie Anderson, Jim Reimer, Mike Gabbei, Chase Welsh, Michael Miller, Catherine Langham, and Kenneth Buck for the time period of January 1, 2014 to the present. To the extent that the government is not in physical possession of these materials, these documents are under the control of the Justice Department by virtue of Paragraph 5(a) of Celadon's Deferred Prosecution Agreement and are therefore subject to Rule 16. *Stein*, 488 F. Supp. 2d at 369. Because Celadon may be liquidating its operations, the preservation of these email boxes is particularly important, and the Justice Department must preserve them even if it disagrees with Mr. Peavler's Rule 16 request.

    c.    All documents and communications related to Celadon's or Quality's transactions with Truck Country, including but not limited to sales from Quality to Truck Country on or around June 15, June 29, July 31, August 30 and September 30, 2016.

    d.    All documents and communications related to Celadon's or Quality's transactions with Truck Country, including but not limited to purchases by Quality from Truck Country on or around June 28, August 22, August 30, September 29, and October 3, 2016.

    e.    All documents and communications related to Celadon's or Quality's transactions with Truck Country, including but not limited to the transaction referred to as the September Trade Agreement in Paragraph 3 of the Indictment.

    f.    All documents and communications related to a revolving line of credit of approximately $300 million alleged in Paragraph 14 of the Indictment, including but not limited to those related to compliance with the "bank covenants" as referenced in Paragraphs 15 and 16 of the Indictment.

  g.  All accounting policies, procedures and internal controls in effect at Celadon or Quality, including those relating to equipment held for sale, asset valuation and impairment guidelines, for the time period of January 1, 2014 to the present.

  h.  All documents and communications related to Celadon's and Quality's auditors, BKD, for the time period of January 1, 2014 to the present. This request includes but is not limited to documents and communications related to BKD's annual audits and quarterly interim reviews, review of the transactions with Truck Country, valuation-related issues, management representation letters, Celadon's Audit Committee investigation and work product of counsel in connection therewith, the PCAOB review, the series of meetings between Celadon and BKD (including a meeting on or about April 5, 2017) as alleged in Paragraph 44 of the Indictment, BKD's investigation as alleged in Paragraphs 42 through 44, and fees paid to BKD as well as BKD's workpapers for the time period January 1, 2014 through the present.

  i.  All documents and communications related to BKD's decision to withdraw its reports on such previously-issued financial statements as alleged in Paragraphs 45 and 46 of the Indictment.

  j.  All documents and communications concerning the PCAOB's review of BKD as it relates to Celadon, including all such documents and communications in the possession of the PCAOB.

  k.  All documents and communications related to Celadon's dismissal of BKD as Celadon's auditor.

  l.  All documents and communications related to Celadon's decision to engage Grant Thornton as the Company's auditor.

  m.  All documents and communications concerning the allegations of deleted emails alleged in Paragraph 43 of the Indictment.

  n.  All documents and communications in the possession of the SEC related to its investigation of Celadon, including but not limited to any subpoena or any other document request (including modifications to any subpoena or any other document request) to Celadon or any other entity or individual (or their counsel), documents provided in response to any subpoena or document request as well as production and FOIA request related correspondence, transcripts or notes of interviews, *Wells* submissions or other submissions or presentations provided to the SEC by Celadon or any other entity or individual (or their counsel).

  o. All correspondence between Celadon and the PCAOB or the SEC regarding Celadon's accounting, Celadon's interaction with its auditors, or any of the events alleged in the Indictment. *Stein*, 488 F. Supp. 2d at 369.

  p. All communications (including correspondence) between Celadon and the Department of Justice or the FBI. This subject includes any submission by Celadon. *Id.* (ordering the production of a section of the white paper by KPMG related to obstruction).

  q. All documents and communications between Celadon and the Department of Justice relating to any of the events alleged in the indictment.

  r. All drafts of the DPA Statement of Facts between Celadon and the Department of Justice. *Id.* (ordering disclosure of draft Statement of Facts because "[d]isclosure of the give and take as to what KPMG was prepared to admit [in the Statement of Facts] and what the government unsuccessfully sought is likely to shed light on matters at issue in this case.").

  s. Documents prepared by Celadon or its counsel (i) summarizing or recording in any way the substance of communications between Celadon on the one hand and the Department of Justice, the FBI, the SEC, the USPIS, or the PCAOB on the other that relate to the events alleged in the indictment, or (ii) discussing evidence bearing on the accuracy of the Statement of Facts or any admissions sought by the government.

  t. Any correspondence between the U.S. government (including but not limited to the USAO, DOJ, Fraud Section, SEC, USPIS PCAOB, and the FBI) and Mr. Peavler, Mr. Meek, Celadon, Quality, Truck Country, BKD, Grant Thornton and/or any other related entity (or their counsel) related to the time period of January 1, 2014 to the present. This request includes all submissions or presentations provided to the government by Celadon or any other entity or individual (or their counsel), including those "factual presentations to the Fraud Section and [the U.S. Attorney's Office]" referenced in Celadon's Deferred Prosecution Agreement. *See, e.g., Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) ("Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option.").

  u. Any information gathered by the government as to the good faith, general honesty, generosity or good character of Bobby Peavler or William Eric Meek or any evidence that would constitute information under Federal Rule of Evidence 608(a) and (b).

  v.  Any written or oral statements made by Bobby Peavler or William Eric Meek or any current or former counsel (or any agent of counsel thereof) under the possession, custody, or control of the government.

  w.  Any written or oral statements made by Celadon, Quality, Truck Country, BKD and/or Grant Thornton or any current or former agent, employee, or counsel (or any agent of counsel thereof) to the government or under the possession, custody, or control of the government.

  x.  All documents and communications between Bobby Peavler or William Eric Meek and any alleged co-conspirator and/or aider and abettor.

  y.  The name, last known address, and telephone number of each prospective government witness.[1]

  z.  The name, last known address, and telephone number of each witness to the offenses charged who was interviewed by the government but will not be called as a government witness.

  aa.  The name, last known address, and telephone number of each alleged unindicted aider and abettor.

**C.** **Expert Witnesses and Reports of Examinations and Tests**

  The government must provide any discovery concerning any expert it intends to use at trial. Please disclose the names and identities of expert witnesses the government intends to call at trial, their qualifications, the subject of their testimony, and any reports, test results, examinations, or experiments that are material to the preparation of the defense or that are intended for use by the government as evidence during its case-in-chief at trial Please also disclose a written summary of any testimony that the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case-in-chief at trial. Fed. R. Crim, P. 16(a)(1)(F), (G).

**D.** **Suppression Issues**

  Pursuant to Federal Rule of Criminal Procedure 12(b)(4)(B), as a predicate to motions under Federal Rule of Criminal Procedure 12, please identify every exhibit the government intends to introduce at trial and disclose the following:

  a.  Whether the government intends to offer into evidence any statement made by Bobby Peavler or William Eric Meek or any current or former counsel (or any agent

---

[1] Counsel will utilize the information provided under requests y through aa in a manner consistent with the Protective Order granted by the Court on December 12, 2019. (Dkt. 29.)

                of counsel) of either of them, and the substance of any such statement. Fed. R. Evid. 801(d)(2)(A).

      b.      Whether any evidence or information in the government's possession, custody, or control constitutes or was derived from communications between Bobby Peavler or William Eric Meek and any current or former counsel (or any agent of counsel), and the substance of such evidence or information.

      c.      Whether any evidence or information in the government's possession, custody, or control was obtained by a search and seizure conducted by the government, and a description of such evidence or information. Please provide copies of any and all documents and photographs seized through any such search. In addition, please provide copies of all warrants or other court orders applied for during the course of the government's investigation of this matter, continuing through the present, including but not limited to search warrants and arrest warrants, whether granted or denied, and whether issued by a federal, state, or local government entity

      d.      Whether any evidence or information in the government's possession, custody, or control was obtained through (a) electronic or mechanical surveillance, including but not limited to wire taps, video recording, body wires, pen registers, or surveillance of telephone calls; (b) the use of a beeper or other tracking device; or (c) a mail cover or trash cover. Please provide copies of such evidence or information. In addition, please provide copies of all warrants or other court orders applied for during the course of the government's investigation of this matter, continuing through the present, including but not limited to search warrants, whether granted or denied, and whether issued by a federal, state, or local government entity.

      e.      Whether the government used any informant or undercover agent during its investigation of the charges in the Indictment or any related allegations and the identity of any such informant or agent. *Roviaro v. United States*, 353 U.S. 53, 64-65 (1957).

      f.      For *in camera* review by the Court, any and all personnel files of all law enforcement witnesses whom the government intends to call at trial, including but not limited to any records of employment discipline or sanction.

**E.**      **Fed. R. Evid. 404(b)**

Pursuant to the Fifth and Sixth Amendments and Federal Rule of Evidence 404(b), please disclose all evidence of any crimes, wrongs, or other acts allegedly committed by Bobby Peavler or William Eric Meek, upon which the government intends to rely to prove motive, scheme, opportunity, intent, plan, preparation, knowledge, identity, absence of mistake, or lack of accident, or any other issue under Rule 404(b).

\*   \*   \*   \*   \*

Your prompt response to this request is important because it will permit Defendants to raise any outstanding or disputed discovery requests as quickly as possible. We reserve the right to supplement these requests as we continue our trial preparation.

Thank you for your timely consideration of and response to these matters. We propose a call next week to discuss the time-sensitive matters set forth in this letter.

Sincerely,

Sergio Acosta

cc: Steven D. DeBrota, Esq. (by email only)
Kyle W. Maurer, Esq. (by email only)
Sean M. Berkowitz, Esq. (by email only)
Joshua G. Hamilton, Esq. (by email only)