# EXHIBIT 5

| | |
|---|---|
| **From:** | Maurer, Kyle (CRM) <Kyle.Maurer@usdoj.gov> |
| **Sent:** | Thursday, April 30, 2020 3:40 PM |
| **To:** | Kelly, Michael (Ptnr-DC); Acosta, Sergio (Ptnr-Chi); Paul, Douglas (Ptnr-DC); Mas, Ildefonso (Assoc-DC) |
| **Cc:** | Sean.Berkowitz@lw.com; Joshua.Hamilton@lw.com; eric.swibel@lw.com; Atkinson, Lawrence (CRM); Linder, Nick (USAINS) |
| **Subject:** | U.S. v. Peavler: Letter |
| **Attachments:** | 2020.04.30 - US v Peavler - Letter to Counsel.pdf |

Michael,

Please see the attached correspondence. We hope you are doing well and staying safe.

Best,

Kyle

Kyle W. Maurer
Trial Attorney, Market Integrity and Major Frauds Unit
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20005
Tel.: (202) 598-2930



U.S. Department of Justice

Criminal Division

*Fraud Section*   Washington, D.C. 20530

April 30, 2020

Michael Kelly, Esq.
Akerman LLP
71 South Wacker Drive
47th Floor
Chicago, IL 60606

Re:   *United States v. Peavler, et al.,* Case No. 19-CR-378-JMS-JMD

Dear Mr. Kelly:

We write in response to your discovery letter dated April 3, 2020. We hope you and your loved ones are in good health, and we hope you continue to recover from your surgery.

As stated before, the government intends to fully comply with its discovery obligations, including those pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), the Jencks Act, 18 U.S.C. § 3500, Federal Rule of Criminal Procedure 16, and other applicable laws.

We have read the *United States v. Paulus* decision you cited in the brief, and we find the analogy to this case largely inapposite. In *Paulus*, the Sixth Circuit concluded that certain *Brady* material—a letter—had not been turned over to the defense. 952 F.3d 717, 720 (6th Cir. 2020). However, the Sixth Circuit's opinion notes that the government had identified this letter to the district court as possible *Brady* and had requested permission to disclose the letter, which the district court denied. *Id.* at 722 ("[T]o its credit, the government also argued [to the district court] that even if the letter wasn't admissible, the government was obligated to disclose it to Paulus under *Brady*."). The *Paulus* facts, therefore, appear relatively unique, and no analogy to this case is appropriate.

The government continues to produce discovery in a timely fashion. As we wrote previously, the government is under no obligation to individually identify and categorize all of the documents that it has produced in a searchable database, and we respectfully decline to do so. *See e.g., United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) (where, as here, the government has timely provided discovery, the government has "no duty to go further and conduct the defense's investigation for it").

### Questions Regarding the U.S. Securities and Exchange Commission

In your April 2020 letter, you also re-raise the issue of materials exclusively in the possession of the U.S. Securities and Exchange Commission ("SEC"). Again, these materials are

not in the possession of the prosecution team in this case, which is comprised of dedicated attorneys from the United States Attorney's Office for the Southern District of Indiana ("U.S. Attorney's Office") and the U.S. Department of Justice, Criminal Division, Fraud Section ("Fraud Section"), as well as dedicated law enforcement officers from the Federal Bureau of Investigation ("FBI"), and the U.S. Postal Inspection Service ("USPIS").

In response to your specific questions regarding the SEC, we can provide you the following information:

- Based on a preliminary review of the records, the SEC was present (either physically or by telephone) for approximately eleven of thirty-two voluntary interviews conducted by the prosecution team to date. Each of these interviews was led by law enforcement officers and/or Justice Department prosecutors.

    o When the SEC was present for an interview, by agreement a law enforcement officer (FBI or USPIS) was responsible for taking notes and compiling the report of the interview.

    o When the SEC was present for an interview, prior to the interview beginning, a prosecutor advised the witness of the criminal investigation being conducted. Separately a participating attorney from the SEC advised the witness of the civil investigation.

    o In cases where the SEC was present for an interview being conducted pursuant to a "proffer agreement" between the interviewee and the prosecution team, the SEC and the interviewee entered into a separate proffer agreement covering the SEC's civil proceedings.

    o The SEC infrequently asked questions, usually to clarify a response or to cover a topic at the end of the meetings that the prosecution team had not focused on.

- No member of the SEC was present for a proceeding of the grand jury, and no transcript of a grand jury proceeding was shared with anyone from the SEC.

- No SEC employee was designated as a Special Assistant United States Attorney in this case.

- The prosecution team and the SEC spoke regularly to discuss updates in their respective cases. In most instances, the topics discussed were logistical or administrative (such as a technical question about a document production from the SEC).

- You asked whether any member of the SEC "ever suggest[ed] investigative leads" for the prosecution team to pursue. The government's case was a criminal referral from the SEC to the U.S. Attorney's Office, which, as you know, is a common practice since the SEC has no authority to bring criminal charges.

- Members of the prosecution team spoke with attorneys from Celadon at various points during the investigation without the involvement of the SEC, such as to discuss the possibility of a

corporate resolution. We understand that representatives from Celadon separately met with members of the SEC at times without the participation of the Justice Department.[1]

- During the criminal investigation, attorneys from Celadon also provided updates on productions and requests for information. Occasionally, attorneys representing Celadon suggested they provide updates to the SEC and Justice Department simultaneously, as the information pertained to both investigations.

- No "draft copy of the indictment or charging instrument" was shared with the SEC, and the SEC did not propose edits to any charging instrument. Similarly, no copy of the SEC's "draft complaint" was shared with a member of the prosecution team, and no member of the prosecution team proposed edits to any civil complaint.

### Questions Regarding Materials Held by Celadon

We previously have communicated the steps taken to preserve evidence at Celadon. We understand that counsel for Eric Meek has been in contact with Celadon's counsel about obtaining records from the company. We are unaware of you making a similar request for documents, although we have advised you that if you intend to do so, you make that request expediently.

We have also notified you that, based on your request to preserve records from Celadon, on April 15, 2020, the FBI took possession of approximately 12 boxes of electronic media from Celadon.[2] Those items are currently in FBI custody in the Indianapolis Field Office. As we advised you on April 20, 2020, the government is currently impaired in its ability to access those records due to the global pandemic or perform even a cursory examination of those documents. However, as we offered to you on the April 20th call, if you wish to inspect these records immediately, please let us know, and we will endeavor to make them available for inspection in Indianapolis. In the meantime, we will attempt to find a way to provide you with additional information about the contents of the electronic media.

With due respect, we disagree with your suggestion that we have failed to take sufficient steps to preserve and obtain the records you requested. As we told you previously, we had already passed along your document request to Celadon. Moreover, in order to preserve the records you wanted, two FBI agents went out into public in the middle of a global pandemic and secured the electronic evidence described above—a step we told you that we intended to follow before you sent your April 3, 2020 letter (see Part E of your letter). Our agents have literally put themselves at risk to ensure your client has the chance to defend himself as he wishes.

### Grand Jury Subpoenas

With respect to your request for copies of grand jury subpoenas issued in the Celadon investigation, we at this time decline to provide you with copies of those subpoenas, as the grand

---

[1] We also understand that the SEC met separately with representatives of BKD once prior to the criminal referral, but we do not have further information about the substance of that meeting.

[2] As we clarified on the telephone call, we were previously told by Celadon counsel that there were 18 boxes of media, but it appears that number was incorrect.

jury investigation remains ongoing. To the extent you need specific information to send Rule 17 subpoenas and you believe that information has not been provided to you, please let us know.

### Privilege Logs

We have checked our records further and do not believe we ever received any privilege log in connection with documents from Celadon. As we indicated we would, we recently have consulted with the SEC (who received some productions of Celadon documents and produced them to the government as part of its criminal referral), and they indicated that they do not recall receiving a privilege log either.

### Interview Reports and Recordings

You have requested copies of interview reports (including FBI Form 302 reports). As we indicated to you, the general practice of the U.S. Attorney's Office is to produce these documents closer to trial. In order to avoid delay, we will produce reports and recordings of interviews well in advance of trial (and significantly earlier than the common practice in this district). We anticipate producing the reports and recordings by June 30, 2020.

\* \* \*

If you have any questions, please do not hesitate to contact us.

Sincerely,

*s/L. Rush Atkinson*
L. Rush Atkinson
Kyle W. Maurer
U.S. Department of Justice
Nicholas J. Linder
U.S. Attorney's Office

cc: Douglas B. Paul, Esq.
Sergio Acosta, Esq.
Ildefonso P. Mas, Esq.
Sean M. Berkowitz, Esq.
Joshua G. Hamilton, Esq.
Eric L. Swibel, Esq.